<hr />

## MURRAY v. NEW YORK CENTRAL RAILROAD COMPANY.

### December, 1868.

The provision of *L.* 1850, p. 233, c.140, § 44, amended by *L.* 1854, p. 611, c. 282, § 8, does not make railroad companies absolutely liable for injuries resulting from a casual defect in the fencing, as if they were insurers; but their liability in such case is a question of a neglect of duty.

The maxim that the letter of a statute is to be restrained by the spirit, applied to a statute imposing liability without qualification, so as to construe it as intended to impose liability in case of negligence only.

Michael Murray sued the defendants, in the superior court,

of Buffalo, for damages sustained by him in the killing of his horse, which was run over by the defendants' train, on their track.

The horse escaped from the adjacent pasture, where he was kept, through a gate which had been duly erected by defendants for a farm crossing.

The gate was off its hinges, at, and shortly before, the time of the accident. There was evidence that Scott, the tenant and occupier of the farm, had several times seen the gate down, and had fitted it up "as well as he could"; but there was no evidence that defendants had notice of its condition, except that workmen employed by them had passed the spot since the gate had been out of repair.

The statute on which plaintiff relied is as follows: "Every railroad corporation, &c.,   . . .   shall erect and thereafter maintain fences,   . . .   with openings, or gates, or bars therein, at the farm crossings  . . .  And so long as such fences and cattle-guards shall not be made, and when not in good repair, such railroad corporation shall be liable for damages which shall be done by the agents or engines of any such corporation to any cattle," &c.,   . . .   and when such fences shall be duly made, and shall be kept in good repair, such railroad corporation shall not be liable for any such damage, unless negligently or willfully done.

*The superior court* gave judgment for plaintiff, which being affirmed at general term, defendants appealed.

*A. P. Laning,* for defendants, appellants.

*Samuel Hand,* for plaintiff, respondent;—Insisted, that by the express language of the act, defendants were liable for injury caused by non-repair, without reference to negligence. Citing Hance *v.* Cayuga R. R. Co., 26 *N. Y.* 432; Shepard *v.* N. Y. & Erie R. R., 35 *Id.* 644; Munch *v.* N. Y. Central R. R. Co., 29 *Barb.* 647; Corwin *v.* N. Y. & Erie R. R. Co., 13 *N. Y.* (3 *Kern.*) 42.

MASON, J.—The decision of this case involves the construc-

tion to be put upon sections 55 and 56 of the general railroad act as amended in 1854. Sections 55 and 56 of this act make it the duty of railroads to erect and maintain fences on the sides of their roads, with openings and gates or bars therein, and for the omission to erect and maintain the same, the statute declares that they shall be liable for all damages which shall be done by their agents or engines, to cattle, horses, &c., thereon.

Section 56 employs language which, at first view, seems to favor the construction, that, when the fences are out of repair, the railroad company shall be absolutely liable, without any reference to the question of their negligence in making the repairs. The language of the section in this respect is: "*That, so long as such fences shall not be made, and when not in good repair, such railroad corporation shall be liable for damages which shall be done by the agents or engines of such corporation* to cattle, horses, &c., thereon." *L.* 1854, p. 611, and Same Stat. 2 *R. S.* 5 ed. 689, 690, §§ 55, 56.

This expression, "*when not in good repair*," can scarcely mean what the literal language would imply. Such a construction would exclude every consideration of negligence from its contemplation, and would render these corporations liable in every conceivable case where their fences were not, at the time of the injury, in proper repair.

A tortfeasor in the night-time throws down the fence, and the owner's cattle escape from his fields upon the railroad track the same night, and are killed, and the railroad is held liable. The act of God, manifest in the hurricane, sweeps down miles of the railroad fence, and before it can be put up the farmers' cattle along the line of the road escape upon the railroad and are killed, and still, the railroad company is liable, under a literal reading of this statute. They would, in short, be liable in all cases where the road is not in repair, whether caused by tempest, by flood, or by the wrongful acts of third persons, although there had been no opportunity to repair. Such a construction of this act should never be indulged.

A stronger exemplification of the maxim " the letter killeth, while the spirit keepeth alive," can scarcely be presented, than is afforded in this statute. The duty is intended to be im-

posed upon these corporations to erect and keep in repair fences at the sides of their road. This is the object and design of the act, and to enforce this duty, the penalty in damages is imposed, that they shall pay for all cattle, horses, &c., killed or injured by their agents or engines upon their road, no matter how free from all negligence they may have been in causing the injury.

This duty to keep in repair, requires vigilance to ascertain defects, and the energetic application of the means necessary to make the repairs as soon as the defects are ascertained. Every statute is presumed to have a reasonable intendment; and I cannot bring my mind to impute to the legislature so unjust and unreasonable an intent in the statute under consideration as the plaintiff's case invokes. It is unreasonable to suppose the legislature intended to render these corporations liable to so severe penalties where they had performed their whole duty in regard to repairs, and such, I am satisfied, was never the intention of the legislature in making this enactment. The letter of this statute, upon the most familiar rules of construction, must yield to this spirit where the legislative intent is so manifest. Such is the construction which must be put upon this statute. Munch *v.* New York Central R. R. Co., 29 *Barb.* 647; Poler *v.* N. Y. Central R. R. Co., 16 *N. Y.* 476.

It is proper to remark in this connection, that this clause of the statute relied upon by the plaintiff as a positive enactment, rendering these corporations liable where such fences shall not be in good repair, has the word "gates" left out, while it is used in the former part of the act. This may have been by design, as they are for the use of the farmers at the farm crossings, and they should reasonably be charged with some care of them while they are constantly using them.

There being no negligence imputable to the defendants in the act of killing this colt, the inquiry remains whether there was sufficient evidence of the defendants' negligence in not repairing this gate to justify the submission of that question to the jury. I do not think there was. The fact that some laborers in the employ of the defendants passed over the railroad at this point after the gate was loosed from the hinges,

Murray *v.* New York Central R. R. Co.

should not be held as justifying a finding of notice of this defect in the gate to the defendants. I infer that these men were common laborers, and if they did discover the defect, it would not be held a notice to the defendants; but for aught that appears, the gate may have been up and fastened in its proper position at the time they passed. As only four days had elapsed since the gate was out of repair, and as it had generally been kept up during these four days, and in its proper position, and fastened with a chain and padlock, I do not think there was sufficient to send the case to the jury upon the defendants' negligence in not repairing this gate.

There is also strong evidence upon which to charge the plaintiff's bailee (Scott) with negligence, that contributed to this injury, and if so, the plaintiff could not recover. I prefer, however, to place the case upon the former ground of a failure of proof to show negligence in the defendants. The judge should have nonsuited the plaintiff, and it follows that the judgment must be reversed, and a new trial granted, costs to abide the event of the action.

WOODRUFF, J., also cited Poler *v.* N. Y. Central R. R. Co., 16 *N. Y.* 481, as showing that it was the tenant's duty to have made reasonable effort to notify the company of the defect. The statute does not make the company insurers, in respect of the fences; but their liability is a question of neglect of duty, and in the case of a casual defect, either notice to the company, lapse of time, or other circumstances from which negligence could be inferred, must be shown.

A majority of the judges concurred.

Judgment reversed, and new trial ordered, costs to abide event.